**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **THE SOCIETY HOUSE, LLC,** | |
| **Plaintiff,** | |
| | **Civil Action No.: 21-13123 (ES) (MAH)** |
| **v.** | **OPINION** |
| **STATE OF NEW JERSEY,** | |
| **Defendant.** | |

**SALAS, DISTRICT JUDGE**

Plaintiff, The Society House, LLC ("Plaintiff" or "Society House") filed suit against the State of New Jersey ("Defendant" or "State") seeking a declaration that the New Jersey Municipal Land Use Law ("MLUL"), N.J.S.A. §§ 40:55D-66.1 and 40:55D-66.2, violates the (i) Fair Housing Act ("FHA"), as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.*[1]; (ii) Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; and (iii) New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1, *et seq.* (D.E. No. 1 ("Complaint" or "Compl.") ¶¶ 61–93). Before the Court are cross motions for summary judgment filed by Plaintiff and Defendant pursuant to Federal Rule of Civil Procedure 56 with respect to all claims. (D.E. Nos. 30 & 31). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court **DENIES** Plaintiff's motion for summary judgment, **GRANTS** Defendant's motion for summary judgment, and enters judgment in Defendant's favor.

---

[1] The Fair Housing Amendments Act of 1988 ("FHAA") extended the FHA's protections to individuals with handicaps. Throughout this Opinion, the Court refers to the FHA as amended by the FHAA.

## I.      BACKGROUND[2]

### A.      Factual History

Unless otherwise noted, the following facts are not in dispute.  Plaintiff develops and operates a Residential Health Care Facility ("RHCF")[3] in Livingston, New Jersey that is licensed and regulated by the New Jersey Department of Community Affairs ("DCA").  (Pl. SUMF ¶¶ 1 & 8; Def. Resp. SUMF ¶¶ 1 & 8; Def. SUMF ¶ 3; Pl. Resp. SUMF ¶ 3).  According to Plaintiff, its RHCF houses handicapped and disabled residents, including residents with dementia and terminal illnesses.  (Pl. SUMF ¶¶ 1–2).  Defendant disputes this fact and asserts that "[a]side from its own statements, Plaintiff submits no proofs regarding the medical status of the residents of its sole facility in Livingston Township, New Jersey or their day-to-day needs."  (Def. Resp. SUMF ¶ 2).

In March 2020, Plaintiff applied for a zoning permit to operate an RHCF in the Township of West Caldwell, Essex County, New Jersey.  (Pl. SUMF ¶¶ 13 & 15; Def. Resp. SUMF ¶¶ 13 & 15; Def SUMF ¶ 4; Pl. Resp. SUMF ¶ 4).  The proposed site for the Society House RHCF in West Caldwell was located in a single-family residential district.  (Pl. SUMF ¶ 14; Def. SUMF ¶ 5).  On March 9, 2020, the West Caldwell Township Planning and Zoning Official issued a zoning permit

---

[2]      The Court gathers the following facts primarily from Plaintiff's statement of undisputed material facts (D.E. No. 30-3 ("Pl. SUMF")), Defendant's responses thereto (D.E. No. 34-1 ("Def. Resp. SUMF")), Defendant's statement of undisputed material facts (D.E. No. 31-1 ("Def. SUMF")), and Plaintiff's responses thereto (D.E. No. 35-1 ("Pl. Resp. SUMF")).

[3]      According to the Facilities for Residential Health Care Act, an RHCF is defined as "any facility, whether in single or multiple dwellings, whether public or private, whether incorporated or unincorporated, whether for profit or nonprofit," which:

> (1) is operated at the direction, or under the management, of an individual or individuals, a corporation, a partnership, a society, or an association;
> (2) furnishes food and shelter to four or more persons 18 years of age or older who are unrelated to the proprietor;
> (3) provides any one or more of such persons with dietary services, recreational activities, supervision of self-administration of medications, supervision of and assistance in activities of daily living, and assistance in obtaining health services; and
> (4) is regulated by either the Department of Health or the Department of Community Affairs.

N.J.S.A. § 30-11A-1.

to Plaintiff to construct a single-family adult family care group home for elderly persons and physically disabled adults.  (Def. SUMF ¶ 6; Pl. Resp. SUMF ¶ 6).  Based on the issuance of the zoning permit, Plaintiff purchased the West Caldwell site and submitted architectural plans for its RHCF to the Township of West Caldwell for approval as part of a construction permit application. (Def. SUMF ¶ 7; Pl. Resp. SUMF ¶ 7).

On December 4, 2020, West Caldwell Township zoning official, Mr. Bloch, issued Plaintiff a notice of violation in connection with Plaintiff's proposed RHCF.  (Def. SUMF ¶ 8; Pl. Resp. SUMF ¶ 8; Pl. SUMF ¶ 20; Def. Resp. SUMF ¶ 20).  In the notice, Mr. Bloch explained he had issued the original zoning permit because he believed that Plaintiff's facility would operate as a single-family adult family care group home, licensed by the Department of Health ("DOH"), which is permitted in *all* residential districts of a municipality pursuant to Section 40:55D-66.1 of the MLUL.  (Def. SUMF ¶ 9; Pl. Resp. SUMF ¶ 9; Pl. SUMF ¶ 21; Def. Resp. SUMF ¶ 21).[4]  However, upon learning that Plaintiff intended to operate an RHCF licensed by the DCA, Mr. Bloch rescinded the zoning permit since RHCFs are not permitted within the single-family residential zone in West Caldwell and are not listed in the MLUL as being permitted within *all* residential districts of a municipality.  (Def. SUMF ¶ 10; Pl. Resp. SUMF ¶ 10; Pl. SUMF ¶¶ 21 & 23; Def. Resp. SUMF ¶¶ 21 & 23).  As such, Mr. Bloch advised Plaintiff that the proposed RHCF required a use variance approval from the Zoning Board of Adjustment to go forward.  (Def. SUMF ¶ 10;

---

[4]     The relevant provision of the MLUL provides:

> Community residences for persons with developmental disabilities, community shelters for victims of domestic violence, community residences for persons with terminal illnesses, community residences for persons with head injuries, and adult family care homes for persons who are elderly and adults with physical disabilities shall be a permitted use in all residential districts of a municipality, and the requirements therefor shall be the same as for single family dwelling units located within such districts.

N.J.S.A. § 40:55D-66.1.  N.J.S.A. § 40:55D-66.2 provides definitions for the community residences listed in N.J.S.A. § 40:55D-66.1.  *See* N.J.S.A. § 40:55D-66.2.  The Court will refer to the challenged MLUL provisions, including N.J.S.A. § 40:55D-66.1 and N.J.S.A. § 40:55D-66.2 together as the "MLUL."

Pl. Resp. SUMF ¶ 10; Pl. SUMF ¶ 24; Def. Resp. SUMF ¶ 24).   Society House's managing member, Justin Wrobel, spoke to Mr. Bloch about the likelihood of receiving a use variance for Society House's RHCF.   (Pl. SUMF ¶ 25; Def. Resp. SUMF ¶ 25).   According to Plaintiff, Mr. Bloch informed Mr. Wrobel that a use variance would likely be denied.   (Pl. SUMF ¶ 25).   Thus, Plaintiff did not seek a use variance.   (Def. SUMF ¶ 11; Pl. Resp. SUMF ¶ 11).

###   B.   Procedural History

On June 30, 2021, Plaintiff filed the instant action against Defendant.   (*See generally* Compl.).   Specifically, in its Complaint Plaintiff contends that the MLUL is facially discriminatory because it does not permit its RHCF, licensed by the DCA, which houses handicapped and disabled residents, to operate as of right in all residential zoning districts, in contrast to other residences which operate just like a RHCF but are licensed by the DOH pursuant to N.J.S.A. §§ 30:11B-1, *et. seq*.   (Compl. ¶¶ 6, 8 & 54–60).   Accordingly, Plaintiff seeks a declaratory judgment that the MLUL violates the (i) FHA ("Count I"), (ii) Title II of the ADA ("Count II"), and (iii) NJLAD ("Count III").   (Compl. ¶¶ 61–93; *see also id.* at 18–19).   Plaintiff further seeks a declaration that RHCFs licensed by the DCA be permitted to operate in any single-family residential district.   (*Id.* at 18–19).   On November 12, 2021, Defendant answered the Complaint and raised a number of affirmative defenses, including that all of Plaintiff's claims are barred by sovereign immunity. (D.E. No. 14 at 21).

On July 6, 2022, shortly before summary judgment motions were due, Plaintiff sent Defendant a letter "regarding an error [it] came across in the Complaint."   (Def. SUMF ¶ 17; Pl. Resp. SUMF ¶ 17).   Therein, Plaintiff acknowledged that although its Complaint asserts that the MLUL is facially discriminatory because it permits certain community residences servicing disabled residents licensed by the *DOH* pursuant to N.J.S.A. §§ 30:11B-1, *et seq.*, to exist in all

residential zones, it is actually the *Department of Human Services* ("DHS") and not the DOH that issues licenses under that statute.  (Def. SUMF ¶ 18; Pl. Resp. SUMF ¶ 18).  Plaintiff stated that it did "not intend to amend the Complaint."  (*Id.*).  Rather, Plaintiff stated that it will note the error in its summary judgement papers and refer to the DHS as the department to issue licenses pursuant to N.J.S.A. § 30:11B-1, *et seq.*, moving forward.  (*Id.*).

Plaintiff and Defendant filed the instant motions for summary judgment on July 22, 2022.  (D.E. No. 30-2 ("Pl. Mov. Br.") & D.E. No. 31-2 ("Def. Mov. Br.")).  In its motion for summary judgment, Plaintiff argues that the MLUL is facially discriminatory under the FHA and ADA because it does not permit its RHCF, licensed by the DCA, which houses handicapped and disabled residents, to operate as of right in all residential zoning districts, in contrast to community residences servicing non-disabled or disabled residents licensed by the DHS, or the Department of Children & Families ("DCF"), as well as adult family care group homes licensed by the DOH.  (Pl. Mov. Br. at 1).  Defendant also moved for summary judgment.  In its motion, Defendant argues that Plaintiff's FHA and ADA claims are barred by sovereign immunity.  (Def. Mov. Br. at 14–18 & 29–37).  Further, Defendant contends that even if these claims are not barred by sovereign immunity, Plaintiff's FHA and ADA claims fail on the merits because the MLUL is not discriminatory on its face.  (*Id.* at 18–28 & 30–32).  The motions are fully briefed.  (D.E. No. 34 ("Def. Opp. Br."); D.E. No. 35 ("Pl. Opp. Br."); D.E. No. 36 ("Pl. Reply"); D.E. No. 37 ("Def. Reply")).

## II.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial burden

of showing that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. Once the moving party has met this burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Cosm. Gallery, Inc. v. Schoeneman Corp.*, 495 F.3d 46, 51 (3d Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The mere existence of an alleged disputed fact is not enough. *See id.* at 247–248. A fact is "material" if under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* at 248. Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *See id.*

The Court must consider all facts and their reasonable inferences in the light most favorable to the nonmoving party, *see Drumgo v. Kuschel*, 684 F. App'x 228, 230 (3d Cir. 2017), and the procedure "is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008) (citing *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)).

## III.  DISCUSSION

### A.  Sovereign Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The reach of the Eleventh Amendment has been extended to "suits by in-state plaintiffs, thus barring all private suits against non-consenting States in federal court." *Lombardo*

*v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008).  The Eleventh Amendment precludes claims for damages, as well as claims for injunctive or declaratory relief.  *See Cory v. White*, 457 U.S. 85, 90–91 (1982).  Nevertheless, there are three primary exceptions to Eleventh Amendment immunity: (i) waiver by the state, (ii) congressional abrogation, and (iii) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law.  *Garden State Elec. Inspection Servs. Inc. v. Levin,* 144 F. App'x 247, 252 (3d Cir. 2005).

### i.   FHA (Count I)

Defendant moves for summary judgment on Plaintiff's FHA claim, arguing that this claim is barred by sovereign immunity.  (Def. Mov. Br. at 14).  In response, Plaintiff asserts that its FHA claim is not barred by sovereign immunity because the Eleventh Amendment precludes only claims for damages and not its request for declaratory relief.  (Pl. Opp. Br. at 3).  For the reasons set forth below, the Court agrees with Defendant.

*First*, Defendant argues that the waiver exception does not apply.  (Def. Mov. Br. at 15–16).  The Court agrees.  A state's waiver must be "unequivocally expressed."  *Pennhurst State School & Hosp v. Halderman*, 465 U.S. 89, 99 (1984).  A state may consent to suit "by making a clear declaration that it intends to submit itself to federal court jurisdiction" or by invoking federal court jurisdiction voluntarily.  *Lombardo*, 540 F.3d at 195–96.  As the State points out, it has neither made a clear declaration that it intends to submit itself to the Court's jurisdiction nor invoked the Court's jurisdiction voluntarily by bringing suit.  (Def. Mov. Br. at 15–16).  In fact, the State reserved its sovereign immunity argument in its answer.  (D.E. No. 14 at 21).  And in opposition, Plaintiff does not argue that this exception applies.  (*See* Pl. Opp. Br.).  Accordingly, the waiver exception to sovereign immunity is not applicable.

*Second*, the State argues that the congressional abrogation exception does not apply.  (Def. Mov. Br. at 16–18).  The Court agrees.  "It has repeatedly been held that Congress did not abrogate state sovereign immunity when it enacted the Fair Housing Act."  *Ramos v. Raritan Valley Habitat for Human.*, No. 16-1938, 2019 WL 4316575, at *8 (D.N.J. Sept. 12, 2019) (citing *Heine v. Comm'r of Dep't of Cmty. Affs. of New Jersey*, No. 11-5347, 2014 WL 4199203, at *6 (D.N.J. Aug. 22, 2014)); *see also Gregory v. S. Carolina Dep't of Transp.*, 289 F. Supp. 2d 721, 724–25 (D.S.C. 2003), *aff'd*, 114 F. App'x 87 (4th Cir. 2004); *Project Life, Inc. v. Glendening*, 139 F.Supp.2d 703, 711 (D. Md. 2001) *aff'd*, 46 F. App'x 147 (4th Cir. 2002); *Kuchmas v. Towson Univ.*, No. 06-3281, 2007 WL 2694186, at *8–9 (D. Md. Sept. 10, 2007).  And Plaintiff has set forth no argument to suggest that Congress intended to or did abrogate the states' immunity when it enacted the FHA even in the context of its claim seeking declaratory relief.  (*See* Pl. Opp. Br.).  Accordingly, the congressional abrogation exception is inapplicable.

*Third*, Plaintiff argues that the declaratory relief exception applies, and the State is not entitled to sovereign immunity because Plaintiff only seeks a declaration that the MLUL violates the FHA and that it may operate its RHCF in any residential district.  (Pl. Opp. Br. at 3).  Plaintiff contends that the cases that held the FHA was not intended to abrogate sovereign immunity do not preclude claims for equitable relief and argues that while the Eleventh Amendment may preclude the award of damages, federal courts have routinely recognized that a court may issue declaratory or injunctive relief compelling a state to comply with federal law.  (*Id.*).  The State argues that the declaratory relief exception to sovereign immunity does not apply because Plaintiff does not bring this action against a state official.  (Def. Mov. Br. at 16; Def. Reply at 5–6).  The Court agrees with Defendant.

Courts have routinely held that sovereign immunity applies to a state or state agency, regardless of whether legal or equitable relief is sought. *See Pennhurst*, 465 U.S. at 100–01; *see also Thorpe v. New Jersey*, 246 Fed. App'x. 86, 87 (3d Cir. 2007). Nevertheless, under what is known as the doctrine of *Ex Parte Young*, the Eleventh Amendment permits suits for prospective injunctive or declaratory relief against a state official in his or her official capacity, because "official-capacity actions for prospective relief are not treated as actions against the State." *Heine v. Comm'r of The Dep't of Cmty. Affs. Of the State of New Jersey*, No. 11-5347, 2016 WL 7042069, at *6 (D.N.J. Dec. 1, 2016), *aff'd sub nom. Heine v. Comm'r of Dep't of Cmty. Affs. Of New Jersey*, 794 F. App'x 236 (3d Cir. 2020) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)); *Ex parte Young*, 209 U.S. 123, 159–160, (1908); *ASAH v. New Jersey Dep't of Educ.*, No. 16-3935, 2017 WL 2829648, at *7–8 (D.N.J. June 30, 2017). "A state official is 'stripped of his official or representative character' and thereby deprived of the State's immunity, *Ex parte Young*, 209 U.S. at 159–60, when he commits an 'ongoing violation of federal law.'" *Waterfront Comm'n of New York Harbor v. Governor of New Jersey*, 961 F.3d 234, 238 (3d Cir. 2020) (citing *Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011)). As such, a person who is aggrieved may seek prospective relief by suing him in his official capacity. *See id.* (citing *VOPA*, 563 U.S. at 254–55). However, the exception in *Ex Parte Young* does not apply if "the suit is in fact against the state." *ASAH*, 2017 WL 2829648, at *8 (citing *MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 506 (3d. Cir. 2001)). In other words, the *Ex Parte Young* exception is only applicable to actions against *state officials*. *See Waterfront Comm'n*, 961 F.3d at 238; *Green v. New Jersey*, 625 F. App'x 73, 75 n.2 (3d Cir. 2015); *Law Offices of Christopher S. Lucas & Assocs. v. Disciplinary Bd. of Supreme Ct. of PA*, 128 Fed. App'x 235, 237 (3d Cir. 2005). Since Plaintiff has not named any state officials in its Complaint and has only brought suit against the State itself,

the *Ex Parte Young* exception to Eleventh Amendment immunity does not apply. *Smith v. Twp. of Warren*, No. 14-7178, 2016 WL 7409952, at *7 n.4 (D.N.J. Dec. 22, 2016) (noting that while the plaintiff conceded the Eleventh Amendment barred its FHA claims against the state defendants, the claims for prospective injunctive relief against *state officials* could go forward); *see also Heine*, 2016 WL 7042069, at *6–8  (noting that while *Ex Parte Young* does not apply when the state is the real, substantial party in interest, the plaintiff's FHA claim could go forward because a state official was named as the defendant).  As such, because the declaratory relief exception does not apply, Plaintiff's FHA claim is barred by sovereign immunity.

Plaintiff's arguments to the contrary are unavailing.  Plaintiff cites to *Blake Gardens, LLC v. New Jersey*, 309 F. Supp. 3d 240 (D.N.J. 2018), to support its argument that its FHA claim is not barred by sovereign immunity.  (Pl. Opp. Br. at 4).  In *Blake Gardens*, the Court found that Plaintiff's Complaint seeking equitable relief against the State under the FHA was not barred because neither party argued that the Eleventh Amendment prohibited the plaintiff from suing the State under the FHA for injunctive relief.  *Blake Gardens, LLC*, 309 F. Supp. at 248–49.  The instant case is distinguishable from *Blake Gardens* because Defendant has asserted, from the time it filed its answer, that sovereign immunity bars Plaintiff's FHA claim.  (*See* D.E. No. 14 at 21).  As such, *Blake Gardens* is inapposite.[5]

---

[5]     Plaintiff also cites to *Project Life, Inc.* 139 F. Supp. 2d 703 for support.  (Pl. Opp. Br. at 3).  However, the court in *Project Life, Inc.* stated that the "Court has the authority, under the doctrine of *Ex parte Young*, to issue an injunction to compel *State officials* to comply with Federal law" and did not explicitly address whether a party can properly sue a state for declaratory relief.  *Project Life, Inc.*, 139 F. Supp. 2d at 711 (emphasis added).  Plaintiff also cites to *Welch v. Century 21 Chimes Real Est. Inc.*, No. 90-3410, 1991 WL 29950 (E.D.N.Y. Feb. 27, 1991) which it asserts distinguished between suing to "overturn or otherwise object to a state law" and suing for money damages. (Pl. Opp. Br. at 3–4).  In *Welch*, the Court held that because plaintiff's FHA claim seeks money damages which "would come from the state treasury, the eleventh amendment acts to bar this suit."  *Welch*, 1991 WL 29950, at *1.  In arguing that suit was proper, the plaintiff pointed to § 3615 of the FHA which states that "any law of a State . . . that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid."  *Id.* at *2.  The court found that this section was not relevant because the plaintiff was suing for money damages, not to overturn or otherwise object to a state law.  *Id.*  The court, however, did not address whether

Accordingly, Plaintiff's FHA claim is barred by sovereign immunity. Thus, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's FHA claim.

### ii. ADA (Count II)

Though Defendant also argues that Plaintiff's ADA claim is barred by sovereign immunity, the Court will not decide whether Plaintiff's ADA claim is precluded by the Eleventh Amendment. (Def. Mov. Br. at 29).  With respect to congressional abrogation, Congress has "unequivocally expressed its intent to abrogate sovereign immunity for claims brought under Title II of the ADA." *Geness v. Admin. Off. of Pa. Courts*, 974 F.3d 263, 270 (3d Cir. 2020) (citing *United States v. Georgia*, 546 U.S. 151, 154 (2006).  In *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court held that Title II of the ADA validly abrogated sovereign immunity against states in private suits for *damages* when the State's conduct also violates the Fourteenth Amendment. *Georgia*, 546 U.S. at 159.  The Supreme Court further explained that courts analyzing whether Congress validly abrogated sovereign immunity for a Title II ADA claim against a state or state entity must conduct a "claim-by-claim" analysis.  *Georgia*, 546 U.S. at 159; *see also Geness*, 974 F.3d at 270.

The majority in *Georgia* did not specifically address whether Congress abrogated sovereign immunity in suits for prospective declaratory or injunctive relief.  However, Justice Stevens noted in concurrence that the "state defendants have correctly chosen not to challenge the Eleventh Circuit's holding that Title II is constitutional insofar as it authorizes prospective injunctive relief against the State."  *Georgia*, 546 U.S. at 160 (Stevens, J., concurring). Nevertheless, because the Court finds that Plaintiff's Title II ADA claim fails on the merits, for

---

a party can properly sue a state for declaratory relief under the FHA under the Eleventh Amendment.  As such, Plaintiff's reliance on *Welch* is unavailing.

the reasons set forth below, it will not reach the question of whether sovereign immunity bars Plaintiff's claim for declaratory relief under Title II of the ADA. *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 (3d Cir. 2007) (before considering sovereign immunity issue, the court must determine, "in the first instance," whether any basis exists for a Title II claim); *see also Mary Jo C. v. New York State & Local Retirement System*, 707 F.3d 144, 152 (2d Cir. 2013) ("[I]f a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end.").[6]

### B. Summary Judgment

#### i. ADA (Count II)

Plaintiff moves for summary judgment on its ADA claim, arguing that the MLUL is facially discriminatory under the ADA because it does not permit its RHCF, licensed by the DCA, which houses handicapped and disabled residents, to operate as of right in all residential zoning districts, in contrast to community residences servicing non-disabled or disabled residents licensed by the DHS, or the DCF, as well as adult family care group homes licensed by the DOH. (Pl. Mov. Br. at 1 & 25–26). Defendant opposes and also moves for summary judgment on Plaintiff's ADA claim, contending (among other things) that the MLUL is not facially discriminatory on the basis of disability. (Def. Mov. Br. at 30–31). For the reasons set forth below, the Court agrees with Defendant.

The ADA prohibits discrimination on the basis of disability. *Affinity Healthcare Grp. Voorhees, LLC v. Twp. of Voorhees*, No. 21-0800, 2022 WL 3754832, at *9 (D.N.J. Aug. 30, 2022). The ADA states that "no qualified individual with a disability shall, by reason of such

---

[6]     The Court also need not consider the other exceptions to sovereign immunity with respect to Plaintiff's ADA claim. Nonetheless, the Court notes that Defendant did not waive its sovereign immunity with respect to Plaintiff's ADA claim. As stated previously, Defendant has neither made a clear declaration that it intends to submit itself to this Court's jurisdiction nor voluntarily invoked this Court's jurisdiction by bringing suit. (Def. Mov. Br. at 15–16). In fact, the State reserved its sovereign immunity argument in its answer. (D.E. No. 14 at 21). And in opposition, Plaintiff does not argue that this exception applies. (*See* Pl. Opp. Br.). Accordingly, there is no waiver.

disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under the ADA, a plaintiff must demonstrate that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Geness*, 974 F.3d at 273. Claims of discrimination on the basis of disability under the ADA may proceed under any or all of the following three theories of liability: (i) disparate treatment or intentional discrimination; (ii) disparate impact; and (iii) failure to make reasonable accommodation. *See Allentown Victory Church v. City of Allentown, Pennsylvania*, No. 21-3021, 2022 WL 4071851, at *4 (E.D. Pa. Sept. 1, 2022); *W. Easton Two, LP v. Borough Council of W. Easton*, 489 F. Supp. 3d 333, 362 (E.D. Pa. 2020); *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005). The Court will consider Plaintiff's arguments under these theories in turn.

     ***Disparate Treatment.*** Under the disparate treatment theory, a plaintiff must demonstrate that the defendant's alleged discrimination was because of a disability. *Wind Gap*, 421 F.3d at 178. "Generally, to prevail on a disparate treatment claim, a plaintiff must demonstrate that some discriminatory purpose was a 'motivating factor' behind the challenged action." *431 E. Palisade Ave. Real Est., LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020) (quoting *Wind Gap*, 421 F.3d at 177). "The discriminatory purpose need not be malicious or invidious, nor need it figure in solely, primarily, or even predominantly into the motivation behind the challenged action." *Wind Gap*, 421 F.3d at 177 (internal quotation marks and citation omitted). Instead, a plaintiff need only "show that a protected characteristic played a role in the defendant's decision to treat her differently." *Id.* (internal quotation marks and citation omitted).

However, "where a plaintiff demonstrates that the challenged action involves disparate treatment through explicit facial discrimination, or a facially discriminatory classification, a plaintiff need not prove the malice or discriminatory animus of a defendant," because "the focus is on the explicit terms of the discrimination." *Hansen Found., Inc. v. City of Atl. City*, 504 F. Supp. 3d 327, 336 (D.N.J. 2020) (emphasis added) (internal quotation marks and citation omitted). "Put another way, direct evidence of intent is supplied by the policy itself." *431 E. Palisade Ave.*, 977 F.3d at 284 (internal quotation marks and citation omitted); *Wind Gap*, 421 F.3d at 179 ("[W]e must examine the language of the challenged regulation or policy, aided, if applicable, by any evidence of record that informs the analysis."). "Where a regulation or policy facially discriminates on the basis of the protected trait, in certain circumstances it may constitute per se or explicit . . . discrimination because the protected trait *by definition* plays a role in the decision-making process, inasmuch as the policy explicitly classifies people *on that basis*." *431 E. Palisade Ave.*, 977 F.3d at 285 (internal quotation marks and citation omitted) (alteration in original). That is, a provision "facially discriminates against the handicapped where it singles them out and applies different rules to them." *Allentown Victory Church*, 2022 WL 4071851, at *5. "Generally applicable regulations, even those that expressly include protected classes or their proxies, in contrast, do not discriminate on their face, unless the different treatment . . . was necessarily disability based." *431 E. Palisade Ave.*, 977 F.3d at 285 (internal quotation marks and citation omitted).

The crux of Plaintiff's facial challenge is that the MLUL is facially discriminatory because it does not permit its RHCF licensed by the DCA, which houses disabled residents, to exist as of right in all residential districts, while granting that privilege to community residences servicing non-disabled and disabled residents licensed by the DHS, or the DCF, as well as adult family care

group homes licensed by the DOH.  (Pl. Mov. Br. at 1–2).  Accordingly, Plaintiff asserts that the residents of such RHCFs cannot enjoy the benefit of living in any residential district as can other disabled and non-disabled individuals, unless the municipality explicitly allows the RHCF or the RHCF is granted the extraordinary relief of a use variance.  (*Id.* at 2).  In sum, Plaintiff states that the MLUL's zoning restriction, guided solely by which state agency licenses the community residence, is arbitrary and discriminatory on its face.  (*Id.* at 21).  For the reasons set forth below, the Court disagrees.

Because the touchstone of explicit facial discrimination is that the discrimination is apparent from the terms of the policy itself, the Court begins by examining the language of the challenged provisions.  *Allentown Victory Church*, 2022 WL 4071851, at *5.  The relevant provision of the MLUL provides:

> Community residences for persons with developmental disabilities, community shelters for victims of domestic violence, community residences for persons with terminal illnesses, community residences for persons with head injuries, and adult family care homes for persons who are elderly and adults with physical disabilities shall be a permitted use in all residential districts of a municipality, and the requirements therefor shall be the same as for single family dwelling units located within such districts.

N.J.S.A. § 40:55D-66.1.  Plaintiff also cites to N.J.S.A. § 40:55D-66.2 (Pl. Mov. Br. at 1–2), which provides definitions for the community residences listed in N.J.S.A. § 40:55D-66.1.  *See* N.J.S.A. § 40:55D-66.2 ("'Community residence for persons with developmental disabilities' means any community residential facility licensed pursuant to P.L.1977, c. 448 (C.30:11B-1 *et seq.*) providing food, shelter, and personal guidance, under such supervision as required, to not more than 15 persons with developmental disabilities or with mental illnesses."); *id.* ("'Community shelter for victims of domestic violence' means any shelter approved for a purchase of service contract and certified pursuant to standards and procedures established by regulation of the [DHS] pursuant to

P.L.1979, c. 337 (C.30:14-1 *et seq.*), providing food, shelter, medical care, legal assistance, personal guidance, and other services to not more than 15 persons who have been victims of domestic violence"); *id.* ("'Community residence for persons with head injuries' means a community residential facility licensed pursuant to P.L.1977, c. 448 (C.30:11B-1 *et seq.*) providing food, shelter and personal guidance, under such supervision as required, to not more than 15 persons with head injuries, who require assistance, temporarily or permanently"); *id.* ("'Community residence for persons with terminal illnesses' means any community residential facility operated as a hospice program providing food, shelter, personal guidance, and health care services, under such supervision as required, to not more than 15 persons with terminal illnesses.").

As an initial matter, Plaintiff does not argue or show that some "discriminatory purpose" by the State was a motivating factor behind the rescission of its zoning permit in West Caldwell. *431 E. Palisade Ave.*, 977 F.3d at 284.  Further, there is no discrimination on the basis of disability that is apparent from the terms of the MLUL itself.  To be sure, this is not a case where a challenged provision singles out disabled residents or explicitly imposes burdens unique to disabled residents by its very terms.  *See, e.g., W. Easton Two, LP*, 489 F. Supp. 3d at 355 ("The ordinance *singles out* methadone clinics for different zoning procedures such that it is facially discriminatory under the ADA . . . " (emphasis added) (internal quotation marks and citation omitted)); *Human Res. Research & Mgmt. Grp. v. Cnty. of Suffolk*, 687 F. Supp. 2d 237, 254 (E.D.N.Y. 2010) ("[I]t is undisputed that [the ordinance] is discriminatory on its face, in that it imposes restrictions and limitations *solely* upon a class of disabled individuals—people who are seeking treatment to recover from drug and alcohol addiction—*that are not generally imposed on others seeking to live in Suffolk County.*" (emphasis added)).  In fact, as Defendant points out, the explicit terms of N.J.S.A. § 40:55D-66.1 actually appear to ensure that zoning laws encompass, rather than restrict,

certain facilities for disabled individuals, including those who reside in community residences for persons with developmental disabilities, community shelters for victims of domestic violence, community residences for persons with terminal illnesses, community residences for persons with head injuries, as well as adult family care homes for persons who are elderly and adults with physical disabilities, by providing that such residences *shall be* a permitted use in all residential districts of a municipality.  N.J.S.A. § 40:55D-66.1; (Def. Mov. Br. at 5–6).  *See, e.g., Affinity Healthcare Grp. Voorhees, LLC*, 2022 WL 3754832, at *11 (finding that the Voorhees Township Code which outlined permitted uses for the township zoning district was not facially discriminatory because it did not single out a protected class for less favorable treatment.).  And though Plaintiff argues that the MLUL facially discriminates against disabled residents who choose to live in its RHCF, neither N.J.S.A. § 40:55D-66.1 nor N.J.S.A. § 40:55D-66.2 of the MLUL mentions RHCFs let alone singles them out for less favorable, differential treatment as opposed to other residences.  Accordingly, the Court cannot say based on the terms of the policy itself, that the MLUL discriminates on its face on the basis of disability.

Plaintiff argues that the omission of RHCFs from the MLUL has the same effect as if they were expressly excluded by name.  (Pl. Reply at 10).  The Court disagrees.  The Third Circuit's decision in *431 E. Palisade Ave. Real Est., LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020) is instructive on this point.  There, Plaintiff argued that a zoning ordinance was facially discriminatory under the FHA because it failed to include "assisted living facilities" among its permitted uses in single-family districts as of right, but explicitly allowed them in a different district.  *Id.* at 280.  In finding that Plaintiff could not demonstrate a likelihood of success on the merits on its claim, the Third Circuit concluded that the City's zoning ordinance did not discriminate on its face, in part because assisted living facilities were not even identified in the

challenged provision. *Id.* at 285. As such, the Court would not import an "explicit classification where none otherwise exist[ed]" where there was no indication that any different treatment was "because of" a protected class. *Id.* at 285, 287; *id.* at 286 ("Failure to permit a land use as of right is not tantamount to an express prohibition."). So too here, the Court declines to import an explicit classification into the MLUL where none otherwise exists. The fact that the MLUL permits certain community residences, but not RHCFs, as of right in all residential districts does not mean it "discriminate[s] on [its] face in the absence of any invocation of the protected class." *Id.* at 287. There is no indication that disabled status, rather than, for example, the size of the residence, is the dispositive trait singled out for different treatment. *Id.* at 287–88. In fact, as Defendant points out (Def. Mov. Br. at 23–25), under N.J.S.A. § 40:55D-66.2, community residences for persons with developmental disabilities, community shelters for victims of domestic violence, community residences for persons with head injuries, and community residences for persons with terminal illnesses, which are permitted as of right under N.J.S.A. § 40:55D-66.1, are limited to no more than 15 persons. N.J.S.A. § 40:55D-66.2. Likewise, under the New Jersey Adult Family Care Act, adult family care homes, permitted as of right under N.J.S.A. § 40:55D-66.1, are defined as residences "housing no more than three clients." N.J.S.A. § 26:2Y-3. In contrast, based on the way they are defined, RHCFs have no upper cap on the number of residents they serve. N.J.S.A. § 30-11A-1. (Pl. Opp. Br. at 9). As such, the Court finds Plaintiff's argument unavailing.

Further, even if, as Plaintiff argues, the omission of RHCFs from the MLUL has the same effect as if they were expressly excluded by name, there is nothing to indicate that RHCFs are necessarily defined based on the disability of its residents. As Section 12102 of the ADA explains, a person may be considered disabled if he or she (i) has a physical or mental impairment that substantially limits one or more life activities; (ii) has a record of such an impairment; or (iii) is

regarded as having such an impairment.  42 U.S.C. § 12102.  Here, an RHCF is defined as "any facility, whether in single or multiple dwellings, whether public or private, whether incorporated or unincorporated, whether for profit or nonprofit," which:

> (1) is operated at the direction, or under the management, of an individual or individuals, a corporation, a partnership, a society, or an association;
>
> (2) furnishes food and shelter to four or more persons 18 years of age or older who are unrelated to the proprietor;
>
> (3) provides any one or more of such persons with dietary services, recreational activities, supervision of self-administration of medications, supervision of and assistance in activities of daily living, and assistance in obtaining health services; and
>
> (4) is regulated by either the Department of Health or the Department of Community Affairs.

N.J.S.A. § 30-11A-1.  A "resident" is defined as a person 18 years of age or older who is

> (1) ambulant, with or without assistive devices;
>
> (2) has been certified by a licensed physician to be free from communicable disease and not in need of skilled nursing care; and
>
> (3) except in the case of a person 65 years of age and over, is in need of dietary services, supervision of self-administration of medications, supervision of and assistance in activities of daily living, or assistance in obtaining health care services.

N.J.S.A. § 30-11A-1.  The Act further provides that this definition "shall not be construed to prevent care of residents in emergencies or during temporary illness for a period of one week or less and shall not be construed to prevent a licensed physician from ordering nursing or other health care services."  *Id.*  While Plaintiff asserts that its RHCFs house disabled residents, the aforementioned definition does not indicate that an RHCF necessarily means a facility for those who are disabled or handicapped—those who under the ADA have a physical or mental impairment that substantially limits one or more life activities.  *Compare, Wind Gap*, 421 F.3d at

19

179 (questioning whether "personal care home" necessarily means "home for the disabled or handicapped" where on its face the term personal care home "could fairly be used to describe any number of facilities providing services to residents who may not necessarily have, have had, or be regarded as having a physical or mental impairment that substantially limits a major life activity") *with Allentown Victory Church*, 2022 WL 4071851, at \*5 (finding the definition of "Institutions or Residences for Children, the Aged, or the Handicapped" was based, in part, on disability because these residences are defined as "group residential facilit[ies] that provide[ ] supportive services and treatment . . . [to], *the mentally ill or physically handicapped and elderly*") (alteration and emphasis in original).[7]  As such, even if, as Plaintiff argues, the omission of RHCFs from the MLUL has the same effect as if they were expressly excluded by name—an argument that, as discussed above, is unavailing in light of *431 E. Palisade Ave*—there is nothing to indicate that the MLUL singles out disabled residents since RHCFs are not necessarily defined based on the disability of its residents.

As further support for its position, Plaintiff cites to N.J.S.A. § 30:11A-3(a) to argue that RHCFs were created to provide living arrangements for individuals with disabilities.  (Pl. Mov. Br. at 24–25).  In fact, Plaintiff contends that an express purpose of the Facilities for Residential

---

[7]     Plaintiff also appears to argue that the way the MLUL treats RHCFs turns them into proxies for discrimination. (Pl. Reply at 5 n.2).  The Court is not persuaded.  Under the proxy theory a regulation or policy cannot "use a technically neutral classification as a proxy to evade the prohibition of intentional discrimination," such as classifications based on gray hair (as a proxy for age)."  *Wind Gap*, 421 F.3d at 177.  However, this case is distinguishable from "proxy theory" cases where, as the Third Circuit noted in *Wind Gap*, there were four elements that led courts to find discrimination that are lacking here: (i) the alleged discriminatory classification was actually defined in terms that largely coincided with the FHAA definition of "handicap"; (ii) the classification was used specifically to "single out" facilities for handicapped individuals for different treatment "because of" their disability; (iii) there was often direct or circumstantial evidence of discriminatory animus; and (iv) the defendant's purported reason for treating plaintiff's facility differently was predicated on a justification for treating disabled persons differently that was of questionable legitimacy.  *Id.* at 180.  Here, (i) the MLUL does not even mention RHCFs but regardless, the definition of RHCFs does not largely coincide with the ADA's definition of disability; (ii) the MLUL did not "single out" RHCFs for differential treatment; (iii) there is no circumstantial evidence of a discriminatory animus; and (iv) the Defendant's purported reason for treating Plaintiff's facility differently is not predicated on a justification for treating disabled persons differently.  Accordingly, the Court finds Plaintiff's argument unavailing.

Health Care Act is to assure that handicapped or disabled residents living in an RHCF are afforded the opportunity to live with as much independence and autonomy as they are capable of and are not deprived of any legal right solely by reason of their living in such facilities.  (*Id.*).  The Court disagrees.  Nothing in N.J.S.A. § 30:11A-3(a) refers to handicapped or disabled individuals.  Rather, N.J.S.A. § 30:11A-3(a), entitled "Rules, regulations and standards," merely provides that "[t]he Department of Health and the Department of Community Affairs shall each adopt, promulgate, and enforce such rules, regulations, and standards with respect to the residential health care facilities . . . to assure that: persons living in such facilities are afforded the opportunity to live with as much independence, autonomy, and interaction with the surrounding community as they are capable of" and "are not deprived of any constitutional, civil, or legal right solely by reason of their living in such facilities."  *Id.*; *but see Hansen Found., Inc.*, 504 F. Supp. 3d at 337 (finding provision of city code, which set forth location restrictions, explicitly discriminatory because it was entitled "Housing for Persons with Disabilities" such that there was no confusion regarding which population it was is intended to restrict).  Accordingly, the Court cannot say that the MLUL's failure to include RHCFs within its ambit singled out or burdened disabled residents.

The authority to which Plaintiff cites does not support a contrary conclusion.  Plaintiff cites to *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293 (3d Cir. 2007) to support its argument that the MLUL is facially discriminatory under Title II of the ADA.  (Pl. Mov. Br. at 25–26).  In *New Directions*, the plaintiff's application for a zoning permit to operate a methadone clinic for adults who have been addicted to heroin was denied based on a Pennsylvania statute that prohibited such clinics from operating within 500 feet of many structures, including schools, churches, and residential housing developments without the issuance of a permit.  490 F.3d at 298–299, 304.  The Third Circuit found the law to be facially discriminatory because it singled out

methadone clinics, and thereby methadone patients, for different zoning procedures.  *Id.* at 304.
In contrast and as stated above, the MLUL does not even mention RHCFs, let alone single them
out for less favorable, differential treatment.  And even though the MLUL may not include RHCFs
within its ambit, a failure to include is not the same as an exclusion, and there is nothing to indicate
that RHCFs are necessarily defined based on the disability of its residents.  As such, *New
Directions* is inapposite.

Plaintiff also cites to *Blake Gardens*, 417 F. Supp. 3d 493 (D.N.J. 2019) in support of its
argument that the MLUL is facially discriminatory.[8]  (Pl. Mov. Br. at 21–23; Pl. Reply at 6–7.)  In
*Blake Gardens*, the District of New Jersey considered two 2015 amendments to the MLUL which
(i) reclassified dementia care homes as health care facilities and placed them under the review of
the Department of Health, and (ii) excluded persons with Alzheimer's disease from the definition
of persons with a head injury.  417 F. Supp. 3d at 500–01.  Accordingly, after the 2015 revisions,
residences for individuals with Alzheimer's disease or dementia were no longer exempted under
the MLUL but became subject to zoning approval by local municipalities before they could be
built in a residential zone.  *Id.* at 501.  The Court held that the amendments were facially
discriminatory under the FHA because they did not allow community residences for individuals
with Alzheimer's disease or dementia, where it allowed similar homes for individuals with head
injuries, developmental disabilities, terminal illnesses, and non-disabled persons.  *Id.* at 503–04.
Thus, the 2015 amendments applied different rules specifically on the basis of disability, namely
Alzheimer's disease or dementia.  In contrast, here, the MLUL does not explicitly single out
individuals with disabilities for less favorable treatment.  And again, even though the MLUL may

---

[8]      Though this argument is raised in the context of Plaintiff's FHA claim, the Court briefly considers it in the
context of Plaintiff's ADA claim since "[t]he FHA and the ADA's requirements are 'essentially the same.'"  *Oxford
House, Inc. v. Twp. of N. Bergen*, No. 21-19260, 2022 WL 2341630, at *3 (D.N.J. June 29, 2022)

not explicitly include RHCFs within its ambit, there is nothing to indicate that RHCFs are necessarily defined based on the disability of its residents. As such, the Court finds Plaintiff's reliance on *Blake Gardens* unavailing.[9]

Accordingly, Plaintiff has failed to show that the MLUL is discriminatory under a disparate treatment theory.[10]

***Disparate Impact.*** To the extent that Plaintiff raises a disparate impact theory (Pl. Reply at 4 n.1), this argument similarly fails. To prove a disparate impact theory of disability discrimination, Plaintiff must demonstrate that the facially neutral provision set forth in the MLUL had "a significantly adverse or disproportionate impact" on persons in a protected category. *Lapid-*

---

[9] Plaintiff's reliance on *Arc of New Jersey, Inc. v. State of N.J.*, 950 F. Supp. 637 (D.N.J. 1996) and *Matter of Commitment of J.W.*, 672 A.2d 199 (App. Div. 1996), which Plaintiff cites in the context of its FHA claim is similarly unpersuasive. (Pl. Mov. Br. at 22 n.3). In *Arc*, the District of New Jersey found a provision of the MLUL to be invalid because it by its very terms "permit[ted] municipalities to impose restrictions on the housing of developmentally disabled individuals." 950 F. Supp. at 644–45. In *Matter of Commitment of J.W.*, the Court considered the following two provisions: (i) N.J.S.A. § 30:11B–2 which stated that residences for the developmentally disabled and mentally ill shall not house persons who have been assigned to a State psychiatric hospital after having been found not guilty by reason of insanity; and (ii) N.J.S.A. § 40:55D–66.1, as defined by § 40:55D-66.2, which allowed community residences for the developmentally disabled to be a permitted use in all residential districts but excluded "a person who has been committed after having been found not guilty of a criminal offense by reason of insanity." 672 A.2d at 201–02. The Court held that these provisions were inconsistent with the FHA "because they discriminate against mentally ill persons who have been adjudged incompetent to stand trial or not guilty by reason of insanity by excluding them from admission to community residences." *Id.* at 205. In contrast to these two cases, the MLUL does not even mention RHCFs, let alone single them out for less favorable, differential treatment. And though the MLUL may not include RHCFs within its ambit, there is nothing to indicate that RHCFs are necessarily defined based on disability.

[10] In its brief, Defendant argues that Plaintiff has inappropriately altered the claims made in its Complaint at summary judgment. (Def. Mov. Br. at 2 & 21). In its Complaint, Plaintiff argued that the MLUL is facially discriminatory under the FHA and ADA because it permits certain community residences servicing disabled residents licensed by the DOH to exist in all residential zones in a municipality, while denying the same privilege to its own RHCFs licensed by the DCA. (Compl. ¶¶ 6 & 8). On July 6, 2022, shortly before summary judgment motions were due, Plaintiff sent Defendant a letter "regarding an error [it] came across in the Complaint" and told Defendant it would note the error in its summary judgment papers. (Def. SUMF ¶ 17; Pl. Resp. SUMF ¶ 17). In its motion for summary judgment, Plaintiff now argues that the MLUL is facially discriminatory under the FHA and ADA because it permits community residences servicing disabled residents licensed by the DHS, or the DCF, as well as adult family care group homes licensed by the DOH, to exist in all residential zones in a municipality, while denying the same privilege to RHCFs licensed by the DCA. (Pl. Mov. Br. at 1). Defendant contends that this argument amounts to a new theory of liability because Plaintiff's Complaint did not mention anything about community residences licensed by the DHS or DCF, or adult family care group homes licensed by the DOH. Nevertheless, because, as discussed above, Plaintiff's ADA claim fails even under this purportedly new theory it does not consider Defendant's argument.

Further, because the Court finds that the MLUL does not discriminate on its face it will not consider Defendant's remaining arguments. (Def. Mov. Br. at 23–28 & 31–37).

*Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 467 (3d Cir. 2002); *W. Easton Two, LP*, 489 F. Supp. 3d at 363.  For example, a disparate impact claim typically is "demonstrated by statistics, and a *prima facie* case may be established where gross statistical disparities can be shown."  *Oxford Invs., L.P. v. City of Philadelphia*, 21 F. Supp. 3d 442, 457 (E.D. Pa. 2014) (quoting *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly,* 658 F.3d 375, 382 (3d Cir. 2011)); *W. Easton Two, LP*, 489 F. Supp. 3d at 364.  Plaintiff provides no evidence—statistical or otherwise—to support the notion that the MLUL has a greater adverse impact on a protected group.  In fact, the evidence it does submit shows the opposite.  Namely, Plaintiff provides that it has operated an RHCF, which it asserts houses disabled residents, in the Township of Livingston, New Jersey since 2019.  (Pl. Mov. Br. at 8; D.E. No. 30-4 ("Wrobel Decl.") ¶¶ 3 & 9–10).  And Defendant points out that there are 67 DCA-licensed RHCFs that currently exist in residential zones across the state, which Plaintiff does not dispute.  (Def. SUMF ¶ 22; Pl. Resp. SUMF ¶ 22).  Accordingly, any potential claim by Plaintiff under a disparate impact theory fails.[11]

In sum, because Plaintiff has failed to make out a prima facie case of disparate treatment or disparate impact under the ADA, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's ADA claim.

### ii.    NJLAD (Count III)

Finally, Defendant moves for summary judgment on Plaintiff's claim under the NJLAD, arguing that the State is immune from suit under the NJLAD in federal court.  (Def. Mov. Br. at 37).  Plaintiff concedes that its claim, pursuant to N.J.S.A. § 10:5-12.5, is not cognizable in federal court and thus withdraws its claim for relief under the NJLAD.  (Pl. Mov. Br. at 2–3 n. 1).

---

[11]    Plaintiff does not appear to raise any argument under the reasonable accommodation theory and thus the Court will not consider this theory.  (*See, e.g.,* Pl. Mov. Br.; Pl. Opp. Br.; Pl. Reply).

Accordingly, Defendant's motion for summary judgment as to Plaintiff's NJLAD claim is **GRANTED**.

### C.      Attorney's Fees

Finally, Plaintiff asks the Court to award it reasonable attorney's fees should it also grant Plaintiff's motion for summary judgment under the FHA and ADA.  (Pl. Mov. Br. at 26–27). Because the Court denies Plaintiff's motion for summary judgment and grants Defendant's motion for summary judgment, Plaintiff's request for attorney's fees is similarly **DENIED.**

## IV.    CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's motion for summary judgment, **GRANTS** Defendant's motion for summary judgment, and enters judgment in Defendant's favor.

**Dated:** March 15, 2023                                              */s/ Esther Salas*
                                                                                  **Esther Salas, U.S.D.J.**